ROSALIE VIVIAN WOODSON, Executrix of Estate of JOHN S. WOODSON, Deceased, Respondent, v. SAMUEL M. WOODSON, JR., ET AL., Appellant, No. 41345—224 S. W. (2d) 978.

Division One, November 14, 1949.

Rehearing Denied, December 12, 1949.

*Edward L. Scheufler, Wherritt & Sevier* and *Maurice Benson* for appellant.

*Robert E. Coleberd, Francis G. Hale* for respondent; *Arthur R. Kincaid* and *Lawson, Hale & Coleberd* of counsel.

CLARK, P. J.—Plaintiff, as executrix of the estate of John S. Woodson, deceased, sued Samuel M. Woodson, Jr., and New England Mutual Life Insurance Company to recover one-half the

proceeds of two insurance policies on the life of Samuel M. Woodson, Sr., deceased. The Insurance Company filed answer in the nature of a bill of interpleader and, by court order, was permitted to deposit the amount due on the policies, $18,735.35, in court, was discharged and allowed an attorney fee of $500.00 to be deducted from the deposit and taxed as cost. Defendant, Samuel M. Woodson, Jr., filed answer claiming the entire sum deposited. Upon a trial, the court rendered a decree in favor of plaintiff for one-half the amount deposited and ordered the costs taxed equally against plaintiff and defendant, Samuel M. Woodson, Jr. Defendant, Samuel M. Woodson, Jr., appeals from the judgment and the plaintiff appeals from the order taxing one-half the costs against her. We will continue to refer to the appealing parties as plaintiff and defendant.

One policy was issued in 1923 and the other in 1927 on the life of Samuel M. Woodson, Sr. His wife, Ariel Woodson, was designated as beneficiary. He reserved the right to change the beneficiary or to make settlement with the Company in accordance with certain options contained in the policies.

In 1928 the insured executed special settlement agreements under the Fourth Option in each policy. At that time his wife, Ariel Woodson, and his two minor sons, Samuel M. Woodson, Jr., 17 years old, and John S. Woodson, 16 years old, were living.

We here set out the relevant portions of the settlement agreement under the smaller policy, underscoring certain phrases which we think are of especial aid in construing the instrument. [The settlement agreement under the other policy is the same except that the permissible withdrawals are greater.]

"In accordance with the right reserved to me under Policy No. 469047 to change the beneficiary thereunder, I hereby revoke the appointment of ARIEL S. P. WOODSON, my wife, as beneficiary, and request that said policy be made payable in accordance with the following provisions:

"A. 'It is understood and agreed that in case of *the maturity of the policy by reason of the decease of the Insured,* the Company, in lieu of paying in one sum the net amount due on the policy (including any additions) will make monthly payments in accordance with the provisions of the Fourth Option of the policy, the first payment to be made one month after the decease of the Insured, to ARIEL S. P. WOODSON (born June 16, 1880), wife of the insured, if living, such payments to continue during her life; PROVIDED, HOWEVER, that at the decease of the Insured or on the date of any monthly payment thereafter upon having given Thirty (30) days notice in writing, said wife shall have the right to make withdrawals from any amount in the hands of the Company, the total amount of such withdrawals not to exceed Two hundred and fifty Dollars ($250) in any one year.

"B. 'In the event of the decease of said wife either before the decease of the Insured or thereafter and while receiving payments under the Fourth Option as hereinbefore provided, then *at the decease of the Insured or said wife, last surviving,* any amount in the hands of the Company will be apportioned in the manner hereinafter specified, to SAMUEL M. WOODSON, JR. (born May 28, 1910) and JOHN SOISTER WOODSON (born September 27, 1911), sons of the Insured, *if living, in equal shares to each, the share of either not then surviving to be paid in one sum to such deceased son's executors or administrators.*

"C. 'Any share apportioned to either of said sons at any time will be retained by the Company and monthly payments made to such son thereon, in accordance with the provisions of the Fourth Option of the policy, such payments to continue until such son shall have attained the age of Thirty-five (35) years, at which time (or at the time when such son's share is apportioned to him, if after that date) he shall receive any amount in the hands of the Company on his share of the policy in one sum; and FURTHER PROVIDED, that on the date of any monthly payment while receiving payments as provided under the Fourth Option, upon having given Thirty (30) days notice in writing, such son shall have the right to make withdrawals from any amount in the hands of the Company *on his share* of the policy, the total amount of such withdrawals by such son not to exceed One Hundred and twenty-five dollars ($125) during any one year.

"D. 'In the event of the decease of either of said sons after the decease of the Insured and said wife and while receiving payments as provided under the Fourth Option, then any amount in the hands of the Company *on such deceased son's share* of the policy will be paid in one sum to the executors or administrators of such deceased son.

"G. 'The beneficiaries shall have no right to assign, alienate or commute any of the payments hereunder or to anticipate any of the benefits mentioned herein, unless hereinbefore provided.' "

The insured died in 1945. His widow, Ariel, having received monthly payments of interest after his death and having made at least one withdrawal from each policy as provided in the settlement agreements, died in October, 1947. Before her death John S. Woodson died in May, 1947, leaving no descendants, but leaving his widow, the plaintiff, who was appointed executrix of his last will.

Defendant argues that he is entitled to the entire fund because: (1) such is the ▮▮▮ intent of the insured as expressed in the settlement agreements; (2) he is the sole surviving contingent beneficiary; (3) if the benefits under the policies vested in the widow as primary beneficiary, on the death of the insured, the proceeds remaining at her death descended to defendant as her sole heir. Defendant further

contends that plaintiff is not entitled to affirmative relief because she failed to allege and prove that any apportionment was ever made between the two sons as required by the settlement agreements.

While we have attempted to follow defendant's brief in stating his claim in three divisions, we believe that his claim depends entirely upon the single question as to the intent of the insurer and insured, especially the insured, as expressed in the settlement agreements.

Both parties have cited cases announcing rules for construing life insurance policies. It is unnecessary to review those cases. They are in substantial accord with the rule announced in the annotation in 112 A. L. R., page 729, as follows:

"Where the courts have considered the question as to risks, various factors have been relied upon and the question of whether a policy is to be construed as a contract or testamentary disposition, as a general rule the intent of the party applying for the insurance is controlling, and upon this point the terms of the policy and the circumstances surrounding its issuance and upkeep have been held indicative of the applicant's intent."

Condensed, defendant's argument is about as follows: The intention of insured, as expressed in the settlement agreement, was to provide for the members of his immediate family and to exclude the possibility of any part of the fund vesting in someone unrelated to him. That this view is strengthened by paragraph G which forbids the beneficiaries from alienating their shares. That such intent is also evident from paragraph B, which provides for apportionment between the two sons named *after* the death of insured's wife, which apportionment could not be made because John S. Woodson died *before* his mother's death. Then defendant, in effect, says that if we should hold that Ariel Woodson became vested with the entire fund by virtue of her right to make annual withdrawals and the possibility that she might live long enough to consume the entire fund, he is entitled to the amount left at her death as her sole heir.

Because of difference in the wording of the policies and in the surrounding circumstances, cases cited by the parties are of little aid to us in construing the settlement agreements in the instant case. Defendant cites Loos v. The John Hancock Life Ins. Co., 41 Mo. 538; N. W. Mut. Life Ins. Co. v. Fink, 118 Fed. (2d) 761, and N. W. Mut. Life Ins. Co., v. Greiner, (Mich.) 74 N. W. 187.

In the Loos case the policy was payable to the "heirs or representatives" of the insured. This court held that while the word "representatives" usually means executors or administrators, it is sometimes construed to mean next of kin and that it should be so construed under the policy then considered.

In the Fink case the insured designated his second wife and his sister as primary beneficiaries and provided that in the event of

his wife's death her share should be payable to insured's children by his first marriage. The wife died twenty-two hours after the death of insured. In a suit by her administratrix it was held that her estate was not entitled to any part of the proceeds because she died before the policy, according to its terms, became payable by the execution and receipt of proof of death.

In the Greiner case the insured assigned a life policy to his wife with a limitation over "in case of the death of the assignee before the policy becomes due." The policy was made payable in sixty days after notice and proof of death of the insured. Insured and his wife were accidentally killed at the same time. Held that the proceeds were payable to the heirs of the insured and not to the estate of his wife.

Unlike the policies in the last two cases above mentioned, the rights of the beneficiaries ▪▪▪▪ in the instant case were not postponed until notice and proof of death, but became fixed upon the death of the insured. Absent a contrary provision in the policy, that is the general rule [37 C. J., page 581, section 345] and the first sentence of paragraph A of the settlement agreement expressly so provides.

Defendant cites cases such as Jennings v. Newman, 359 Mo. —, 221 S. W. (2d) 487; Schneider v. N. W. Mut. Life Ins. Co., 33 Mo. App. 64, holding that, where property is devised or insurance is made payable to two or more persons as a class, the entire fund will go to the members of the class who survive the testator or the insured, to the exclusion of predeceased members of the class. Those cases are not in point here. The settlement agreements now being considered did not provide for benefits to the wife and sons of the insured as members of a class, but as named individuals; and with the further provisions in paragraphs B and D that the share of a deceased son should go, not to the survivor, but to the executors or administrators of the deceased son.

We have read the case of Rosetti v. Hill, 161 Fed. (2d) 549, cited by both parties, and believe that the questions there decided do not aid either party in the instant case.

Nor can we agree that defendant is entitled to the entire fund as the sole heir of Ariel Woodson, deceased. Ownership of the fund was never vested in her; only the right to receive the income and make certain withdrawals during her life. The possibility that she might live long enough to consume the fund did not vest her with title thereto with descent to her heirs, contrary to the express provision in the settlement agreements for disposing of the residue at her death.

According to recognized rules of construction, it is our duty to try to ascertain and give effect to the intent of the insured as expressed in the settlement agreements. As best we can, we must view the situation as it appeared to the insured at the time he executed the agreements and at his death, for the agreements were then un-

changed. By paragraph A he provided that the income from the fund should go to his wife during her life with the further right to make limited annual withdrawals. In paragraph B he provided that at the death of his wife, either before or after his death, the fund then remaining should be apportioned equally between his two named sons, if living, *"The share of either not then surviving to be paid in one sum to such deceased son's executors or administrators."* However, by paragraph C the receipt of the share of a living son was postponed until he reached the age of thirty-five, but he could receive the income and make certain withdrawals from the amount of *"his share"* after his mother's death and until he reached the age of thirty-five and became entitled to receive his share in a lump sum. By paragraph D the payment of *the share of a deceased son* to his executors or administrators was postponed until the death of insured's wife, for she was entitled to the income and right of withdrawals from the entire fund during her life. Paragraph G merely prevented any beneficiary from aliening his interest until he should receive his full share in a lump sum. After then he or his executors or administrators would have full control.

Defendant argues that the insured did not intend that any part of the fund should ever vest in a person not related to him by blood. The answer to that is he didn't so say in the settlement agreement. He then knew that either son might marry; that he might or might not leave descendants; yet he provided that the share of a deceased son be paid to his estate, knowing that it could be used to pay the son's debts, if any, and that his son's widow, if any, could claim her share in his estate.

We overrule defendant's point that plaintiff is not entitled to affirmative relief because she failed to allege and prove a necessary element of her case, to wit, that an "apportionment" was made between the two sons after the death of their mother, Ariel Woodson. Of course, plaintiff could not make that allegation and proof because one of the sons was not living at the death of his mother. But, according to the terms of paragraph B of the settlement agreement, the apportionment or division can and should be made between the living son and the estate of the deceased son.

██ Plaintiff complains of the action of the trial court in assessing one-half of the costs against her. The principal item of cost which falls upon her is one-half the attorney fee allowed to the Insurance Company as interpleader. One-half of the other costs which she will be required to pay if the trial court's order is sustained will be small. The entire cost of the transcript on appeal and the docket fee in this court must be borne by defendant. The only witnesses in the trial court were plaintiff and defendant, neither of whom are entitled to witness fees.

Under our statutes the prevailing party in an ordinary lawsuit is entitled to recover his costs from the losing party. But that rule is not always followed in interpleader actions such as this.

"However, costs or attorney's fees are not always allowed to claimants recovering a share of the fund deposited, nor are costs or attorney's fees always charged against the losing claimant. It has been held that the prevailing defendant will not be allowed costs and attorney's fees where the fund was not created by such defendant, and it is sometimes directed that each of the claimants pay his own costs." [48 C. J. S., page 110, section 50.]

Here it was necessary to obtain a court decree construing the settlement agreements before either party could come into possession of his or her share. In such cases it is customary and proper to make a reasonable allowance to the interpleader for attorney fee, to be deducted from the fund. This case is in the nature of an equitable proceeding and, under the circumstances, the trial court did not abuse its discretion in dividing the costs between plaintiff and defendant.

We hold that the decree of the trial court, both on the merits and the taxation of costs, should be and is hereby *affirmed*. All concur.